UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                    :
RUSSELL RIVERA, Jr.,                                :      03 Civ. 10127 (RJH) (FM)
                                                    :
                          Plaintiff,                :
                                                    :
           - against -                              :      ORDER
                                                    :
JO ANNE BARNHART,                                   :
Commissioner of Social Security,                    :
                                                    :
                          Defendant.                :
                                                    :
------------------------------------------------------------x

      Plaintiff Russell Rivera, Jr. brings this action *pro se* challenging the final decision of the Commissioner of Social Security (the "Commissioner") that plaintiff is not disabled and therefore ineligible for Supplemental Security Income ("SSI") benefits. The Commissioner answered the complaint and moved to remand the action for further administrative proceedings.

      On January 23, 2006 Magistrate Judge Frank Mass issued a Report and Recommendation ("Report") recommending that the Court grant the Commissioner's motion because of deficiencies in plaintiff's hearing before an administrative law judge. Plaintiff did not file objections to the Report, but defendant objected to the Report's recommendation that a time limit be placed on the administrative hearings on remand. On February 21, 2006, Magistrate Judge Maas issued an Amended Report and Recommendation ("Amended Report") that excluded the time limitation to which defendant had objected. To date, the Court has received no objections to the Amended Report.

The district court adopts a Magistrate Judge's report and recommendation when no clear error appears on the face of the record. See *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985); see also *Greco v. Commissioner of Social Security*, No. 04 Civ. 141, 2005 WL 1388915 at *2 (N.D.N.Y. June 8, 2005) (applying this "clear error" standard in the context of an action regarding Social Security benefits). However, the court is required to make a *de novo* determination of those portions of a report to which objection is made, 28 U.S.C. § 636(b)(1)(C), by reviewing "the Report, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Badhan v. Lab. Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002). The court may then accept, reject, or modify in whole or in part recommendations of the Magistrate Judge. See *Nelson*, 618 F. Supp. at 1189. If a party fails to object to a report within 10 days of being served with the report, that party waives their right to object and appellate review of the district court's decision adopting the report, absent unusual circumstances, is precluded. See *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

Because no objections were made to the Amended Report, the court examined it only for clear error. Having concluded that no such error appears on the face of the record, the Court hereby adopts the Amended Report in its entirety, and grants the Commissioner's motion. The Amended Report is attached in its entirety at the end of this opinion. The Clerk shall close this case.

SO ORDERED.

Dated: New York, New York
March 27, 2006

Richard J. Holwell
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

RUSSELL RIVERA, JR.                   :    **AMENDED**
                                           **REPORT AND**
              Plaintiff,   :    **RECOMMENDATION**
                                           **TO THE HONORABLE**
    -against-                  :    **RICHARD J. HOLWELL**

JO ANNE B. BARNHART,                  :    03 Civ. 10127 (RJH)(FM)
Commissioner of Social Security,
                                      :
              Defendant.
------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

        I have reviewed the Defendant's Objections (Docket No. 15) to my Report and Recommendation (Docket No. 14) and find them convincing. Therefore, I have amended the Report and Recommendation by deleting the last two paragraphs of Section III.D. The Report and Recommendation, as amended, reads as follows:

I.    Introduction

        In this pro se action, plaintiff Russell Rivera ("Rivera") seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") finding that he is not disabled. The case is before this Court on the Commissioner's unopposed motion to have the case remanded for further proceedings, pursuant to the fourth sentence of 42 U.S.C. § 405(g). For the reasons set forth below, that motion should be granted.

II. Background

A. Procedural History

On January 24, 2002, Rivera filed an application for Supplemental Security Income benefits ("SSI") in which he alleged that he became disabled on April 1, 2001. (R. 48-50; Comp. at 1).[1] That application was denied on April 15, 2002. (R 35-38). On May 24, 2002, Rivera requested a de novo hearing before an administrative law judge ("ALJ"), which was held on May 28, 2003. (Id. at 19-33, 39). Following that hearing, ALJ John M. Farley found Rivera ineligible for benefits on July 23, 2003. (Id. at 10-18). The ALJ's decision became final on August 28, 2003, when the Appeals Council denied further review. (Id. at 6-9).

Rivera commenced the present action by submitting his complaint to the Pro Se Office of this Court on October 28, 2003. (See Docket No. 2 at 1). On February 25, 2005, the case was referred to me to report and recommend. (Docket No. 4). On May 11, 2004, the Commissioner answered the complaint, and, on October 14, 2004, she filed the present motion to remand the action for further administrative proceedings. (Docket Nos. 6, 11-12). Rivera has not submitted any opposition papers despite having been served more than one year ago.

---

[1] "R." refers to the certified copy of the administrative record filed by the Commissioner as part of the Answer. (Docket No. 7).

B. Relevant Facts

1. Non-Medical Evidence

Rivera was born in 1980. (R. 25). At the time of the hearing in 2003, Rivera was married and had a four-year-old stepdaughter. (Id. at 25, 32). Although he could not remember the dates, Rivera testified that his last employment was with an ambulance service, helping the driver escort patients in wheelchairs. (Id. at 25-26). He did not receive any training for the work, which involved lifting and carrying disabled people in wheelchairs up and down flights of steps. (Id. at 26, 64). By the time of the hearing, however, Rivera was no longer employed. (Id.).

Rivera testified that he was diagnosed with HIV and Hepatitis C in April 2001, and with AIDS six months later. (Id. at 26-27). He did not receive any treatment for the HIV until around September of 2001. (Id. at 27). When he was diagnosed with AIDS, Rivera was suffering from weight loss, loss of appetite, weakness, and he generally was "sick a lot." (Id.). By the time of the hearing, Rivera's weight was approximately 155 to 160 pounds, up from a low of about 130 pounds. (Id. at 28). Rivera testified that he could walk or stand for about one hour before having to rest, and that he always felt "weak, really tired and fatigued." (Id. at 28). Rivera testified further that the medications he was taking to improve his condition had many side effects, including nausea, diarrhea, fatigue, loss of appetite, dehydration, and, finally, kidney stones, for which hospitalization had been required. (Id. at 29). He also testified that he

3

was losing his teeth and that his vision was deteriorating, preventing him from being able to perform office work. (Id. at 28-29).

Rivera's case manager from Argus Community Care, Equity and Support Services, Reynaldo Rodriguez ("Rodriguez") also testified at the hearing. (Id. at 21). Rodriguez explained Rivera's dire financial situation. (Id. at 30-32). He also stated that Rivera had not been evaluated by a psychologist because of a three-month waiting period at Montefiore Medical Group ("Montefiore"). (Id. at 31).

2. Medical Evidence

Rivera's medical records from Montefiore confirm that he was diagnosed with HIV in April 2001. (Id. at 83, 86). According to the records, Rivera did not begin treatment for his condition until November 2001, when he began taking Combivir, Crixivan and Norvir, which are used to treat HIV, and Zofran, which helps alleviate the side effects of the HIV treatment. (Id. at 78, 79, 86). The records also show that Rivera gained weight, from 146 pounds in September 2001 to 156 pounds in December 2002, and 158 pounds in January 2002. (Id. at 81, 83, 85). In November 2001, Rivera's CD4[2]

---

[2] The CD4 count is

> a measure of the strength of the immune system. . . . A normal CD4 count is 1000. The body starts to get more frequent common infections at around a count of 400. At around a CD4 count of 200 the body becomes susceptible to many unusual infections.

Harborview Madison Clinic, University of Washington Medicine, Glossary for Patients, http://depts.washington.edu/madclin/patients/glossary.html (last visited Jan. 19, 2006).

count was 222 and his viral load[3] was 226,000. (Id. at 83). Laboratory test results from Montefiore dated January 12, 2002, indicate that Rivera's CD4 count had increased to 469, and his viral load had decreased to 5,801. (Id. at 87-88). The report of a further physical examination conducted on December 12, 2002, reveals that Rivera appeared well-nourished, and had a normal blood pressure and heart rate; additionally, he was experiencing mild epigastric[4] tenderness, but there was no hepatomegaly.[5] (Id. at 85).

The administrative record also includes two "Medical Requests for Home Care" certified by Montefiore physicians on November 19, 2001 and June 25, 2003. (Id. at 90-93, 107-10). Both requests state that Rivera sometimes exhibits anxiety, depression and a sleep disorder. (Id. at 91, 108). The first such request shows that Rivera was diagnosed with Hepatitis C on an unspecified date and with pneumonia in February 2000. (Id. at 90). The more recent request states that Rivera was diagnosed with depression,

---

[3] The viral load is

> a measure of how much HIV is found in the blood. The viral load can predict how fast the virus will damage the immune system. In treated patients, the viral load is an accurate measure of how effective treatment is.

Id.

[4] The "epigastrium" is the upper middle region of the abdomen. Sloane-Dorland Annotated Medical-Legal Dictionary 257 (1987).

[5] "Hepatomegaly" is enlargement of the liver. Id. at 340.

5

anxiety disorder and panic attacks in January 2003. (Id. at 107). That request also shows that as of January 2003, Rivera's CD4 count had increased to 805, and his viral load had decreased to 1,743. (Id.).

On July 17, 2002, Dr. Asbury, Rivera's treating physician, completed a "Medical Assessment of Ability to Do Work Related Activities (Physical)" in which he opined that Rivera's impairment limited his ability to lift or carry. (Id. at 66, 104). Dr. Asbury also opined that Rivera could not walk or stand for more than four hours in an eight-hour workday and could not stand or walk without interruption for more than one hour. (Id. at 104). He further opined that Rivera was not limited in his ability to sit, and could climb, stoop, crouch, kneel and crawl occasionally and balance frequently. (Id. at 104-05). Dr. Asbury found that Rivera was mildly limited in pushing and pulling, moving machinery and the ability to withstand temperature extremes. (Id. at 105).

The record also shows that Rivera was admitted to the emergency room at Our Lady of Mercy Medical Center in the Bronx twice in June 2003 because of chest pains. (Id. at 111-14). On June 18, 2003, he was discharged without any diagnosis, but the discharge form states that there was no evidence of a dangerous medical condition. (Id. at 111-12). A second discharge form on June 25, 2003, states that Rivera's chest pain had been diagnosed as coming from the chest wall and caused by "straining the muscles or joints in the chest during physical activity, direct trauma, coughing, or vigorous vomiting." (Id. at 113-14). Rivera was instructed to take Motrin three times a day for the pain. (Id. at 113).

6

On April 15, 2002, a nonexamining state agency medical consultant completed a "Physical Residual Functional Capacity Assessment Form" ("RFC"), which was based solely on Rivera's medical records because he had refused to be examined. (Id. at 99-102). In the RFC, the consultant concluded that Rivera could lift a maximum of twenty pounds occasionally and ten pounds frequently, could stand or walk about six hours in an eight-hour workday, and had no other limitations. (Id.). The RFC further states that Rivera was capable of performing light work and was thus not disabled. (Id. at 97, 100).

### 3. ALJ's Findings

After hearing Rivera's testimony and reviewing the medical evidence, the ALJ concluded that Rivera was not disabled within the meaning of the Social Security Act. (Id. at 15). He first found that Rivera had not engaged in any substantial activity since the time of his application. (Id.). He then noted that the medical evidence indicated that Rivera was suffering from "impairments that cause significant restrictions in the ability to perform basic work activities." (Id.). He determined, however, that Rivera's impairments did not meet the criteria for any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Id.). The ALJ further found that Rivera's "complaints of disabling pain and other symptoms and limitations precluding all significant work activity" were not credible since there was no record of deterioration in his condition. (Id.). The ALJ also found that Rivera

> retains the residual functional capacity to perform light work,

7

> involving lifting and carrying objects weighing up to ten
> pounds; some light work [is] performed while standing, and
> those performed in the seated position often require the
> worker to operate hand or leg controls . . . . The evidence,
> including the findings of the State Agency's medical
> consultants at the initial levels of review . . . supports a
> finding that Mr. Rivera is capable of this level of activity.

(Id. at 16). The ALJ concluded that while Rivera was no longer capable of performing his past work, which required him to lift and carry more than 100 pounds, "there are other jobs existing in significant numbers in the national economy that [he] can perform, consistent with his residual functional capacity, age, education and work experience. (Id.). Lastly, although the ALJ stated in his findings that he "carefully considered all of the medical opinions in the record regarding the severity of [Rivera]'s impairment's," he did not explain the weight, if any, that he gave to the opinion of Rivera's treating physician, Dr. Asbury.

III.  Discussion

The Commissioner seeks remand of this case on the ground that the ALJ failed to give adequate consideration to the opinion of Dr. Asbury, Rivera's treating physician. (See Mem. of Law in Support of Comm'r's Mot. for Remand ("Def.'s Mem.") at 3). Moreover, the Commissioner contends that the ALJ failed to assist Rivera in developing the record, and as such, his decision was based on an incomplete record. (Id. at 4.) Finally, the Commissioner asserts that remand, rather than an award of benefits, is

8

warranted because the record would not compel the conclusion that Rivera is disabled even if the ALJ had applied the correct legal principles. (Id. (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

A. Remand

The Social Security Act authorizes a reviewing court to reverse a Commissioner's decision and remand a case to the Commissioner for further administrative proceedings. 42 U.S.C. § 405(g). Sentence four of 42 U.S.C. § 405(g) provides:

> The court shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.

Id. Remand to the Commissioner is appropriate "'when there are gaps in the administrative record or the ALJ has applied an improper legal standard.'" Damaso Rivera v. Barnhart, 379 F. Supp. 2d 599, 603-04 (S.D.N.Y. 2005) (quoting Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999)). Thus, if the reviewing district court finds that the ALJ's determination was not supported by substantial evidence, remand is proper. Rivera, 379 F. Supp. 2d at 604 (citing Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004); Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).

B. ALJ's Duty to Fully Develop the Record

In deciding whether the ALJ's decision was based on substantial evidence, a reviewing court must determine whether the ALJ complied with his affirmative duty to

9

develop fully the administrative record. Rivera, 379 F. Supp. 2d at 604 (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). This duty is heightened where, as here, the claimant was not represented by counsel at the administrative hearing. See Colondres v. Barnhart, No. 04 Civ. 1841 (SAS), 2004 WL 106893, at *6 (S.D.N.Y. Jan. 18, 2005); Smith v. Bowen, 687 F. Supp. 902, 906 (S.D.N.Y. 1988) ("The ALJ's duty to develop the comprehensive record requisite for an equitable determination of disability is greatest when claimant is unrepresented.").

Here, the ALJ failed to properly develop the administrative record. As the Commissioner concedes, although Rivera testified that he suffered from kidney stones, for which hospitalization had been required (R. 29), the administrative record does not contain any medical records related to that condition, nor is there any indication that the ALJ made any attempt to procure them. Since the ALJ did not fulfill his duty to develop the record fully, his decision was based on an incomplete record and therefore cannot be sustained.

C. The Treating Physician Rule

In addition to having to develop the record fully, the ALJ is required to give "controlling weight to a treating physician's opinion on the nature and severity of a claimant's impairments when the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" Colondres, 2005 WL 106893, at *6 (quoting 20 C.F.R. §§ 401.1527(d)(2), 416.927(d)(2)). The regulations mandate that if controlling

10

weight is not given to the claimant's treating physician's opinion, the ALJ must consider a series of factors in determining the proper weight to be given to that opinion. Id. Some of those factors include the length, nature, extent and frequency of the treatment relationship, the evidence supporting the opinion, and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(d)(2)-(6). The regulations further direct that more weight generally is to be given to the opinion of an examining source than to the opinion of someone who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1).

The ALJ is further required to explain and provide "good reasons" for the failure to credit a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Failure to do so is a ground for remand. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); Colondres, 2005 WL 106893, at *3.

Here, the administrative record contains differing opinions with regard to Rivera's ability to perform work-related activities. The report prepared on April 15, 2002 by the nonexamining state agency medical consultant states that Rivera could lift or carry up to twenty pounds occasionally, and up to ten pounds frequently. (R. 96). The report further states that Rivera could stand or walk and sit for a total of six hours a day and was not limited in his ability to push or pull. (Id.). The consultant further opined that Rivera had no postural, manipulative, visual, communicative or environmental limitations. (Id. at 97-99). These findings are consistent with the consultant's conclusion that Rivera was capable of performing light work, which requires lifting up to twenty pounds at a time

11

and a "good deal" of walking or standing. (Id. at 100). The consultant's findings, however, are contrary to the opinion of Rivera's treating physician, Dr. Asbury, whose Medical Assessment states that Rivera could walk or stand for a maximum of four hours a day, and only one hour without interruption. (R. 104). Dr. Asbury's report further states that Rivera's ability to push or pull, move machinery, and withstand temperature extremes, was mildly affected by his impairment. (Id. at 105).

Although the ALJ made reference to Dr. Asbury's report in his decision, (id. at 14), he failed to explain his reasons for rejecting his opinion and crediting instead that of the medical consultant. Since the regulations require that an ALJ give good reasons for rejecting the well-supported opinion of a claimant's treating physician, and the ALJ did not do so here, his findings cannot be upheld because they are not supported by substantial evidence.

D. Remand for Calculation of Benefits

Finally, although there has been no opposition, the Commissioner notes that a reversal of the ALJ's decision and remand solely for the calculation of benefits would not be proper because the administrative record fails to establish that Rivera is disabled. (Def.'s Mem. at 4). Such a remand solely for the calculation of benefits is an "extraordinary action and is proper only when further development of the record would serve no purpose." Rivera, 379 F. Supp. 2d at 604 (citing Rosa, 168 F.3d at 83).

Here, as the Commissioner correctly observes, there is evidence in the record tending to support a finding of non-disability. In particular, Rivera's medical

records show that his treatment for HIV has been somewhat effective, in that his weight and CD4 cell count increased substantially between November 2001 and January 2003, (R. 81, 83, 85, 90, 107), while his viral load decreased during the same period. (Id. at 90, 107). The physical examination of Rivera in December 2001 further shows that his blood pressure and heart sounds were normal, and that he experienced some mild epigastric tenderness, but had no hepatomegaly. (Id. at 85, 95). The Court therefore cannot say, as a matter of law, that Rivera is entitled to benefits.

IV. Conclusion

For all of the foregoing reasons, the Commissioner's motion to remand the case for further administrative proceedings should be granted.

V. Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Richard J. Holwell and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Holwell. The failure to

13

file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:   New York, New York
         February 21, 2006

                                          FRANK MAAS
                                          United States Magistrate Judge


Copies to:

Hon. Richard J. Holwell
United States District Judge

Russell Rivera, Jr.
4319 Boyd Avenue, Apt. #1
Bronx, New York 10466

Susan D. Baird, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Fax:   (212) 637-2750

14